IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DANNY L. CROSS,<br><br>      Plaintiff,<br><br>vs.<br><br>FOODS INC. d/b/a DAHL'S and DAHL'S FOOD MARKETS,<br><br>      Defendants. | No. 4:10-cv-00424-JEG<br><br>**O R D E R** |

Now before the Court is a Motion for Summary Judgment brought by Defendants Foods Inc., d/b/a Dahl's, and Dahl's Food Markets (collectively, Dahl's)[1]. Plaintiff Danny L. Cross (Cross) resists. The parties have not requested a hearing, and the Court finds that none is required. Accordingly, the matter is fully submitted and ready for disposition.

**I.  PROCEDURAL AND FACTUAL HISTORY**[2]

Cross began working for Dahl's as a part-time employee in July of 1970. After being with the company for six months, Cross was transitioned to a full-time position. Through the course of his employment with Dahl's, Cross was an at-will employee, a fact explicitly stated in Dahl's handbook and known by Cross. Cross remained an employee of Dahl's, working in five different stores and locations and in numerous different capacities, until his employment was terminated on February 16, 2007.

Dahl's handbook contains a "Code of Conduct" that instructs employees "not [to] conduct personal business on Company time or with Company equipment or resources." Dahl's Employee Handbook, Def.'s App. 48, ECF No. 21-3. The handbook also has a section entitled

---

[1] The Court adopts the parties' practice of referring to the defendant entities in the singular.

[2] The Court views the facts as undisputed or "in the light most favorable to [Cross], the party opposing summary judgment." Holden v. Hirner, 663 F.3d 336, 339 n.2 (8th Cir. 2011).

"Termination" which states as follows:

> It is the policy of Dahl's that any conduct which, in its view, interferes with or adversely affects employment or the Company may result in disciplinary action, up to and including dismissal. Examples of conduct for which employment may be terminated include, but are not limited to, unsatisfactory performance, unacceptable or unexcused tardiness or absenteeism, violation of the "Code of Conduct" or any Dahl's policy, dishonesty, insubordination, or any reason not prohibited by law. <u>Dahl's reserves the right to terminate employment immediately if it believes circumstances warrant</u>.

Id. at 47.

At the end of January 2007, Dahl's switched Cross from dairy manager to a position in the bottle redemption center, which did not result in a change in pay or benefits. Two weeks prior to his discharge, Cross was disciplined by Mark Pearson (Pearson), a supervisor for Dahl's, who issued Cross a written warning for allegedly dropping a mop onto a customer's foot and then failing to apologize for the incident. After receiving the warning, Cross denied in writing that the event happened. That same day, Cross was again disciplined by written warning following a customer's complaint that Cross had thrown trash like he was having a fit, had failed to reset a bottle machine, and had walked away from the customer laughing. When confronted with these allegations, Cross denied that the events had occurred as portrayed and claimed that if he had been laughing, it was not at the customer. Dahl's asserts that it was in light of these two violations and Cross' redemption of a minimum of forty cans while on company time that Cross' employment was terminated. While Cross does not deny that he would collect cans abandoned in the parking lot of Dahl's and redeem them while working, Cross avers that Pearson was aware of this practice, had never objected to it, and never formally disciplined him for that conduct.

At the time of his discharge, Cross was 57 years old and at the top of the pay scale for his position, a scale which is based upon an employee's experience and years of service. During the last year of his employment, Cross felt that he was being hollered at by his employer and other workers and was addressed by his co-workers, including Pearson, in a belligerent tone of voice.

2

Following the termination of his employment, Cross submitted an Intake Questionnaire to the Equal Employment Opportunity Commission (EEOC), which the EEOC received on December 13, 2007, in which Cross alleged that Dahl's "wanted to terminate me due to my age and manufactured a way to terminate me." Intake Questionnaire, Def.'s App. 6, ECF No. 21-3. The EEOC sent a Notice of Charge of Discrimination to Dahl's on February 4, 2008, stating that an "unperfected charge was received on December 13, 2007. A Perfected charge will follow." Notice of Charge of Discrimination, Pl.'s App. 43, ECF No. 25-4. On March 26, 2008, the EEOC received a Charge of Discrimination from Cross that was dated March 24, 2008. The Charge of Discrimination was not notarized, an error which Cross remedied in his second filing dated April 10, 2008, which the EEOC received on September 8, 2008. On June 15, 2010, the EEOC issued Cross a Notice of Right to Sue. Cross timely filed his Complaint with this Court on September 10, 2010. On March 16, 2012, Dahl's filed its Motion for Summary Judgment, which Cross has resisted.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must support its contention by pointing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to demonstrate that no genuine issue of material fact exists. Rule 56(c)(1)(A). The evidence must be "viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).

The initial burden falls on the movant to "inform[] the district court of the basis for its

motion and identify[] those portions of the record which show a lack of a genuine issue."
Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). However, "[i]n order to create an issue for trial the nonmoving party must produce sufficient evidence to support a verdict in [his] favor based on more than speculation, conjecture, or fantasy." Duluth, Winnipeg, and Pac. Ry. Co. v. City of Orr, 529 F.3d 794, 797 (8th Cir. 2008) (internal quotation marks and citation omitted). "A party cannot defeat a summary judgment motion by asserting 'the mere existence of *some* alleged factual dispute between the parties'; the party must assert that there is a '*genuine* issue of *material* fact.'" Quinn v. St. Louis Cnty., 653 F.3d 745, 751 (8th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). The fact must be material so that it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. The grant of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." In re Baycol Prods. Litig., 596 F.3d 884, 888-89 (8th Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "In sum, the evidence must be 'such that a reasonable jury could return a verdict for the nonmoving party.'" Reed v. City of St. Charles, Mo., 561 F.3d 788, 791 (8th Cir. 2009) (quoting Anderson, 477 U.S. at 248).

    **B.**    **Timeliness of the EEOC Filing**

Dahl's first contends that it is entitled summary judgment due to Cross' failure to timely file his Charge of Discrimination with the EEOC. Under the Age Discrimination in Employment Act (ADEA), a claimant is "required to bring a charge of discrimination within 300 days of the alleged discriminatory act." Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 520 (8th Cir. 2011); see 29 U.S.C. §§ 626(d)(1)(B), 633(b).[3] On February 16, 2007, Cross'

---

    [3] Complaints of unlawful employment practices based on age discrimination generally must be filed with the EEOC within 180 days after the alleged discriminatory act occurred. 29 U.S.C. § 626(d)(1)(A). However, in "deferral states," such as Iowa, Millage v. City of Sioux City, 258 F. Supp. 2d 976, 984 (N.D. Iowa 2003) (citing Iowa Code §§ 215.3, 216.5), this time

4

employment was terminated. Cross' initial Charge of Discrimination was received by the EEOC on March 26, 2008, over thirteen months after the alleged discriminatory act occurred. The EEOC did not receive a properly notarized Charge of Discrimination until September 8, 2008; therefore, Dahl's argues that Cross' filing should be dismissed as untimely. Cross contends that the initial filing of his Intake Questionnaire on December 13, 2007, exactly 300 days after the alleged discriminatory act occurred, constituted a charge.

Both parties rely on Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008), to support their respective arguments. In Holowecki, the Supreme Court considered what constitutes a "charge" as used in the ADEA regulations, which does not define the term. Id. at 398-99. The Court held that a document submitted to the EEOC constitutes a charge if it contains "the information required by the regulations" and can "be reasonably construed as a request for the

---

limit is extended to 300 days if the claimant first institutes proceedings with a state agency empowered to prosecute discriminatory employment practices. 29 U.S.C. §§ 626(d)(1)(B), 633(b); see Worthington v. Union Pac. R.R., 948 F.2d 477, 479 & n.3 (8th Cir. 1991). There is no evidence that Cross instituted a proceeding with the ICRC. Nonetheless, because the ICRC and the EEOC "routinely 'cross-file' administrative charges," Millage, 258 F. Supp. 2d at 985, 986 (citing 29 C.F.R. § 1626.10 and Iowa Admin. Code r. 161–1.6(216)) (finding that the "administrative charge was 'initially filed' with the ICRC within the 300-day limitations period, and was timely, even though [the] charge was actually filed first with the EEOC"), Cross' filing with the EEOC constitutes filing with the ICRC. See Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325-28 (2d Cir. 1999) (finding that though the party had filed his administrative charges with the EEOC more than 180 days and less than 300 days after he was allegedly discriminated against, and had not filed any charges directly with the deferral-state agency, his administrative charges were nonetheless timely since the agencies had agreed to work as agents for each other). While 29 U.S.C. § 633(b) normally requires that 60 days must pass after commencement of a state action before the EEOC can act, the court in Perrigo v. Harveys Iowa Management Co., No. CIV 1-99-CV-10003, 2000 WL 33363252, at *5 (S.D. Iowa Mar. 14, 2000), explained that when a complaint is filed between 240 and 300 days after the alleged discriminatory act, Iowa waives its 60-day period of exclusive jurisdiction to allow the EEOC to proceed before the statute of limitation runs. See also Worthington, 948 F.2d at 481-82 (interpreting a similar Nebraska work-share agreement with waiver language to be self-executing, thereby enabling the EEOC to act on the claim the day it was filed). Accordingly, Cross is entitled to the full 300-day time period.

agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Id. at 402. "[T]he filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes . . . ." Id. The Court acknowledged that "under this permissive standard a wide range of documents might be classified as charges," but found this result consistent with the purpose of the ADEA and the principle that pro se litigants, which are more common than not in the administrative context, "are held to a lesser pleading standard than other parties." Id. Applying this standard, the Court found that the pro se plaintiff's Intake Questionnaire and accompanying six-page affidavit, which asked the EEOC to "[p]lease force [defendant] to end their age discrimination," were "properly construed as a request for the agency to act," making them a charge. Id. at 405.

The Eighth Circuit has not yet addressed the issue of what constitutes a charge for the purpose of an ADEA claim since the Supreme Court's decision in Holowecki. Prior to Holowecki, however, the Eighth Circuit in Diez v. Minnesota Mining & Manufacturing Co., 88 F.3d 672 (8th Cir. 1996), applied a test set out by the Seventh Circuit, which measured the sufficiency of a filing by determining if it was "submitted under circumstances that would lead the EEOC to believe that the complaining party sought to 'activate the Act's machinery.'" Id. at 676 (quoting Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 542 (7th Cir. 1988)). The Diez court considered three factors when making its determination: (1) "what the claimant and the EEOC personnel said to each other," (2) "what the questionnaire form said," (3) "and what the EEOC actually did in response to receipt of the questionnaire." Id. In light of the claimant's subsequent filing of a charge,[4] the lack of information on the communication between the

---

[4] Since the Eighth Circuit's holding in Diez, the Supreme Court has explicitly rejected the idea that the subsequent filing of a charge could be used to show that a previous filing was not meant to function as a charge. Holowecki, 552 U.S. at 406 (determining that a subsequently filed charge was of no consequence, since the matter at issue was whether the earlier filing

6

claimant and the EEOC, the language of the form itself that indicated that the form was preliminary to a charge, and the claimant's failure to "present[] any evidence to prove the questionnaire was intended to function as a charge," the Eighth Circuit held that the questionnaire could not qualify as a charge under the ADEA. Id. at 677.

In Ries v. Winona County, Civ. No. 10-1715 (JNE/JJK), 2010 WL 3515722 (D. Minn. July 28, 2010), another district court in the Eighth Circuit addressed the implications of the Holowecki decision with regard to the meaning of a charge under the ADEA. The Intake Questionnaire at issue in Ries was found to constitute a charge since it contained all the information required by the EEOC regulations, indicated that the plaintiff's claim was related to discrimination based on age and sex, indicated that plaintiff wanted to file a charge of discrimination, and authorized the EEOC to look into the alleged discriminatory acts of which he complained. Id. at *5. Two days prior to filing this Intake Questionnaire, the plaintiff had also submitted a letter to the EEOC in which he asserted that he was "hereby fil[ing] a sexual and age discrimination charge against [defendant]," a letter which the court concluded "contain[ed] sufficient information to be reasonably construed as a request for the EEOC to take remedial action to protect [plaintiff's] rights." Id. at *7.

In light of the above cases, to determine the sufficiency of an Intake Questionnaire under the ADEA, this Court must first determine if Cross has provided the EEOC "the minimum information the regulations require." Id. at *6. The EEOC regulations list five pieces of information that a charge should contain:

> (1)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings.

Holowecki, 552 U.S. at 396 (citing 29 C.F.R. § 1626.8(a)). While these factors are not

"should be interpreted as a request for the agency to act").

mandatory under the regulations, see 29 C.F.R. § 1626.8(b), they are indicative of when a filing can serve as a charge. See Holowecki, 552 U.S. at 404 (considering the above five factors). The Intake Questionnaire Cross filed provided his name, address, and telephone number, as well as Dahl's name and contact information. In the attached, three-paragraph statement, Cross described some of the events leading up to his termination and his belief that he was terminated due to his age. Cross also identified the total number of workers employed by Dahl's, and indicated that he had not filed a complaint with another agency. Accordingly, Cross' Intake Questionnaire contained all the information requested by the regulations.

Following Holowecki, and consistent with the approach employed in Diez, courts have examined a number of factors to determine whether a filing can be reasonably construed as a request for the EEOC to take remedial action to protect the claimants rights: the language of the filed document; the action taken by the EEOC following the filing; whether the claimant explicitly requested the EEOC to take action or specified the desired relief; whether the claimant attached a sworn, detailed statement; whether the filing indicates that the claimant viewed the filing as a charge; and whether the claimant was represented by an attorney.

The language of the Intake Questionnaire at issue provides that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." Intake Questionnaire, Def.'s App. 5, ECF No. 21-3. The form also specifies that its purpose "is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission *to act* on matters within its jurisdiction." Id. (emphasis added). Courts have interpreted this language, which significantly varies from the language contained on the form considered by the Supreme

Court in Holowecki,[5] to establish that the Intake Questionnaire serves as a charge. See, e.g., Bland v. Fairfax Cnty., Va., 799 F. Supp. 2d 609, 615 (E.D. Va. 2011) (considering the regulatory factors and a similarly phrased Intake Questionnaire and finding that it constituted a charge); Tucker v. Howard Univ. Hosp., 764 F. Supp. 2d 1, 7-8 (D.D.C. 2011) (considering a similarly phrased Intake Questionnaire and determining that its "language leads to the reasonable conclusion that completing the Intake Questionnaire alone can amount to a request for agency action, and therefore a 'charge' under Holowecki"); Beckham v. Nat'l R.R. Passenger Corp., 590 F. Supp. 2d 82, 86-87 (D.D.C. 2008) (finding a material difference between the "Intake Questionnaire" at issue in Holowecki, which by itself did not constitute a charge, and the "Charge Questionnaire" at issue, which it found did constitute a charge in light of its language stating that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination under the relevant statute(s)" (alterations in original)). But see Morrow v. Metro. Transit Auth., No. 08 CIV. 6123(DLC), 2009 WL 1286208, at *6 (S.D.N.Y. May 8, 2009) (holding that a similarly worded Intake Questionnaire did "not, taken on its own terms, constitute a charge of discrimination").[6] While not every Intake Questionnaire constitutes a charge, see

---

[5] In Holowecki, the form specified that its purpose was "to facilitate '*pre-charge* filing counseling' and to enable the agency to determine whether it ha[d] jurisdiction over '*potential* charges.'" Holowecki, 552 U.S. at 405 (emphasis added).

[6] The Court notes that most cases finding the language of an Intake Questionnaire insufficient to constitute a charge were considering forms more similarly worded to the form considered in Holowecki. See, e.g., Nadesan v. Tex. Oncology PA, No. 2:10-CV-239-J, 2011 WL 147570, at *5 (N.D. Tex. Jan. 18, 2011) (finding the Intake Questionnaire was not a charge when the plaintiff simply responded to the questions on the form and attached a detailed statement outlining her allegations but failed to request any agency action, and the Intake Questionnaire contained "the advisory that 'the Commission has jurisdiction over potential charges . . . and to provide such pre-charge filing as is appropriate'" and cautioned that "[a]n officer of the EEOC will review the information you provide and determine whether or not your allegations warrant a charge being filed" (alterations in original)); Grice v. Balt. Cnty., Md.,

9

Holowecki, 552 U.S. at 405 ("[T]he agency is not required to treat every completed Intake Questionnaire as a charge."), the wording of Cross' Intake Questionnaire supports that Cross' filing should be treated as a charge.

The EEOC's actions further support that Cross' Intake Questionnaire constitutes a charge. See id. at 399-400 (noting that an agency is entitled to a degree of judicial deference). After receiving Cross' Intake Questionnaire on December 13, 2007, the EEOC sent a Notice of Charge of Discrimination to Dahl's which referred to Cross' filing as an "unperfected charge." Notice of Charge of Discrimination, Pl.'s App. 43, ECF No. 25-4. The EEOC also informed the ICRC that a charge had been filed. The EEOC's actions provide additional persuasive evidence that Cross' filing should constitute a charge. See Palmer v. Sw. Airlines Co., No. 08 C 6158, 2009 WL 3462043, at *7 (N.D. Ill. Oct. 23, 2009) ("The EEOC's interpretation of [the claimant's] submission as a valid charge is entitled to some deference, and it certainly supports the conclusion that [the claimant's] November 2007 submission can *reasonably* be interpreted as a request for the agency to activate its machinery and remedial processes." (internal citation omitted)).

Though unsworn and not as exhaustive as the six-page affidavit considered in Holowecki, Cross' three-paragraph statement discusses his practice of collecting and redeeming cans, alleges that his supervisor was aware of his activities, and alleges that he was terminated due to his age, which suggests that the Intake Questionnaire was intended as a request to the agency to activate its machinery and remedial processes. See, e.g., Williams v. CSX Transp. Co., 643 F.3d 502, 509-10 (6th Cir. 2011) (applying Holowecki to a Title VII claim and

---

Civil No. JFM 07-1701, 2008 WL 4849322, at *4 (D. Md. Nov. 5, 2008) (finding that an Intake Questionnaire did not constitute a charge when no detailed affidavit was attached, no request for action was made, and the questionnaire established that it was for "pre-charge filing counseling," to help the EEOC to determine if there were "potential charges," and was not labeled as a "Charge of Discrimination").

10

concluding that a "Charge Information Form" filed by a pro se claimant constituted a charge since it identified the parties, sufficiently alleged the discriminatory acts, and stated that the claimant was owed money damages, which constituted a request for the EEOC to act). Further, while Cross failed to explicitly indicate that he intended his Intake Questionnaire to serve as a formal charge, this Court finds that Cross' statement that he "believe[d] they wanted to terminate [him] due to [his] age and manufactured a way to terminate [him]," Intake Questionnaire, Def.'s App. 6, ECF No. 21-3, can be construed as a request for agency action. See, e.g., Mitchell v. United Med. Sys., Inc., No. 10 C 6273, 2011 WL 1526985, at *4 (N.D. Ill. Apr. 20, 2011) (applying Holowecki to a Title VII claim and finding the Intake Questionnaire was a charge when it satisfied the regulations and was submitted with a cover letter that stated the claimant "wish[ed] to initiate this important complaint" and wanted to talk with an agent to discuss the matter in greater detail, which the court held could reasonably be interpreted as a request for action by the EEOC); Palmer, 2009 WL 3462043, at *6 ("Although [plaintiff] did not explicitly request that the EEOC take action to protect her rights, her answers on the intake questionnaire and the detailed statement she attached express her firm conviction that she was treated in a discriminatory manner and can reasonably be construed as requesting the EEOC to act."). But see Grice v. Balt. Cnty., Md., Civil No. JFM 07-1701, 2008 WL 4849322, at * 5 (D. Md. Nov. 5, 2008) (finding that claimant failed to include "a clear 'request for agency action' like the one found in *Holowecki*").

Although Cross had the aid of an attorney, Holowecki does not explicitly impose a greater burden on those claimants represented by counsel. See, e.g., Holender v. Mut. Indus. North Inc., 527 F.3d 352, 357 (3d Cir. 2008) (holding that while "the Supreme Court adopted its more flexible standard in Holowecki at least in part to protect alleged victims of age discrimination who proceed *pro se*. . . . it did not indicate that an entirely different analysis applies to counseled submissions to the EEOC"). Therefore, this Court cannot find that mere

11

representation by counsel deprives Cross of the permissive standard mandated by Holowecki. See also Holowecki, 552 U.S. at 406 ("Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.").

In conformity with permissive standard espoused by the Supreme Court, this Court concludes that by filing the Intake Questionnaire on December 13, 2007, Cross timely submitted a charge.

### C. The ADEA Claim

Dahl's next contends that Cross has failed to comply with the ADEA standard. Dahl's argues that Cross has not established a prima facie case and that, in the event that the Court finds he has, Cross has failed to demonstrate that its legitimate, nondiscriminatory reason for firing Cross is merely pretext.

#### 1. The ADEA Standard

"The ADEA prohibits employers from discriminating against employees on the basis of age." See Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007) (citing 29 U.S.C. § 623(a)(1)). To establish a prima facie claim of age discrimination, Cross must show that he "(1) belonged to the protected class, i.e., was at least 40 years old; (2) was qualified to perform his job; (3) was terminated; and (4) was replaced by another person 'sufficiently younger to permit the inference of age discrimination.'" McGinnis v. Union Pac. R.R., 496 F.3d 868, 875 (8th Cir. 2007) (footnotes omitted) (quoting Hammer v. Ashcroft, 383 F.3d 722, 726 (8th Cir. 2004)). When, as here, there is no direct evidence of discrimination, courts must analyze a claim pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Tusing, 639 F.3d at 515. Therefore, Cross must first establish a prima facie case, then the burden shifts to Dahl's "to articulate a legitimate, nondiscriminatory reason for [its] actions." Thomas, 483 F.3d at 528. If Dahl's articulates such a reason, "the burden shifts back to [Cross]

to show [his employer's] proffered reason was pretextual." Id.

### 2. Cross' Prima Facie Case

Dahl's concedes that Cross was over 40 years of age when the alleged discriminatory act occurred and that his employment was terminated. While Dahl's argues that Cross was not directly replaced, it concedes that Cross' job duties were filled by a younger person; therefore, for the purposes of summary judgment, it does not dispute the fourth prong. Dahl's argues, however, that Cross has failed to demonstrate the second prong of his prima facie case – that he was qualified to perform his job – because of the two written warnings that he received two weeks before his termination and his use of company time to redeem cans.

The Eighth Circuit Court of Appeals noted in Haigh v. Gelita USA, Inc., 632 F.3d 464, 469 (8th Cir. 2011), that "there appears to be somewhat conflicting case law in the circuit" with regard to the standard that a plaintiff must meet to establish the second prong of a prima facie case under the ADEA. In McGinnis v. Union Pacific Railroad, 496 F.3d 868 (8th Cir. 2007), the Eighth Circuit held that under the second prong a "plaintiff must show only that he possesses the basic skills necessary for performance of the job." Id. at 874 n.2 (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001). Dahl's does not dispute Cross' ability to perform his former job, nor is there any indication in the record that he was unable to do so; thus, under the McGinnis standard, the second prong would be met. However, in Erenberg v. Methodist Hospital, 357 F.3d 787, 793 (8th Cir. 2004), another panel of the Eighth Circuit held that the claimant did not meet the qualification prong when she was aware that she was not performing her duties the way that her employer legitimately expected because her employer had identified the deficiencies in her work performance and had communicated them to her on a regular basis.

The present case is distinguishable from Erenberg, as Cross did not have a long-standing history of failing to meet Dahl's expectations, he disputed the only two written reprimands he

received in the last 26 years, and he was never warned that the redemption of cans violated Dahl's expectations. The Haigh court opined that the standard applied in McGinnis was more sound under the McDonnell Douglas burden-shifting framework, but ultimately decided it need not resolve the conflict because the employer articulated a legitimate, nondiscriminatory reason for terminating the claimant and the claimant failed to show it was pretextual. Haigh, 632 F.3d at 470. Following the rationale in Haigh, this Court similarly need not resolve the discrepancy between Erenberg and McGinnis. Even assuming Cross was qualified for his job, and therefore established a prima facie claim, Dahl's has presented a legitimate, nondiscriminatory reason for terminating Cross, which Cross has failed to show was pretextual.

### 3. Dahl's Legitimate, Nondiscriminatory Reason

Dahl's contends that Cross' employment was legitimately terminated because Cross was conducting personal business on company time and had recently received two other written warnings based upon customer complaints. Cross does not contest that Dahl's has presented a legitimate, nondiscriminatory reason for terminating Cross' employment.

At this stage, the employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). In light of this limited burden, Dahl's averments, and the fact that "the burden of persuading the trier of fact that an employer intentionally discriminated against the plaintiff always remains with the plaintiff," Bauer v. Curators of Univ. of Mo., 680 F.3d 1043, 1045 (8th Cir. 2012) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)), the Court finds that Dahl's has proffered a legitimate, nondiscriminatory basis for Cross' termination.

### 4. Cross' Proof of Pretext

"At this stage, [Cross] can avoid summary judgment only if the evidence considered in its entirety (1) create[s] a fact issue as to whether [his employer's] proffered reasons are pretextual

and (2) create[s] a reasonable inference that age was a determinative factor in the adverse employment decision." Loeb v. Best Buy Co., 537 F.3d 867, 872 (8th Cir. 2008) (quoting Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1137 (8th Cir. 2006)). "Under the ADEA, however, age must be the 'but-for' cause of the employer's decision." Tusing, 639 F.3d at 516 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). "[T]he plaintiff must show that the employer's stated reason was false and that age discrimination was the real reason." Id. Cross must prove this "by a preponderance of the evidence (which may be direct or circumstantial)." Baker v. Silver Oak Senior Living Mgmt. Co., 581 F.3d 684, 688 (8th Cir. 2009) (quoting Gross, 557 U.S. at 177-78).

Based on the record before this Court, Cross has failed to prove that the proffered reasons are pretextual. Initially, Cross disputes the degree to which he must demonstrate that Dahl's reason to terminate him is "false." This dispute is irrelevant since Cross has not shown either that Dahl's basis for terminating Cross was factually untrue or that it is unworthy of credence.

In support of his claim, Cross relies largely on how he felt he was being treated by his superiors and co-workers to demonstrate that age-based animus existed. However, the ADEA does "not prohibit employment decisions based upon poor job performance, erroneous evaluations, *personal conflicts between employees*, or even unsound business practices." Haigh, 632 F.3d at 471 (emphasis added) (quoting Hill v. St. Louis Univ., 123 F.3d 1114, 1120 (8th Cir. 1997) (finding that, though there was personal conflict between the plaintiff and his superior, there was no evidence that it was based on age discrimination)). Beyond the lack of other evidence of age-based animus, Cross admitted that he did not believe the actions of his co-workers or supervisors were based on his age, and conceded that the assistant manager was likely equally belligerent to other employees regardless of their age.

While Cross alleges in his Response that the written reprimands arose in mysterious circumstances, Cross has already explicitly stated that he did not think Pearson fabricated the

15

claims. Cross cannot defeat summary judgment merely by disagreeing with Dahl's proffered legitimate, nondiscriminatory basis. "[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." Id. at 470 (alteration in the original) (quoting Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 643 (8th Cir. 2008)). Cross has failed to do so.

Further, it is not this Court's role to "second-guess an employer's personnel decisions" as "employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully." Id. at 471 (quoting Hanebrink v. Brown Shoe Co., 110 F.3d 644, 646 (8th Cir. 1997)). Thus, Cross' assertion that it is preposterous to terminate an employee after 37 years of service for redeeming cans on company time proves unavailing within the context of the legal analysis the Court must pursue. See McKay v. U.S. Dep't of Transp., 340 F.3d 695, 700 (8th Cir. 2003) ("In considering the pretext issue, 'our inquiry is limited to whether the employer gave an honest explanation of its behavior,' not whether its action was wise, fair, or correct." (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994))).

"Pretext may be shown with evidence that the employer's reason for the termination has changed substantially over time." Rahlf v. Mo-Tech Corp., 642 F.3d 633, 640 (8th Cir. 2011) (quoting Loeb, 537 F.3d at 873). However, Cross has failed to demonstrate that any such inconsistency exists. Cross alleges that Pearson originally denied that Cross had committed theft and then later accused him of stealing company time. Cross' allegation relies solely on a deposition statement made by Pearson where Pearson is clearly stating that he did not believe

16

Cross had stolen the cans.[7] Pearson does not deny, nor is he asked to deny, that Cross' behavior constituted theft of company time; accordingly, no inconsistency has been shown. Cross also claims Pearson has added previously received complaints to the proffered reasons for Cross' termination but failed to note these alleged pre-existing complaints on the written warnings Cross' received two weeks before his termination. When confronted with this omission, Pearson initially claimed he omitted noting the previous complaints because they were not recorded as written warnings, then said he did not record them because they were not the same subject matter, and finally justified the omission because Pearson had never had to write up Cross before and felt the extra step was finally needed in this circumstance. While these are varying rationales, they are not incompatible with each other and fail to generate a factual dispute regarding an inconsistency. Further, Pearson's comments were not a progression of changed rationale across the course of this litigation, but a continued explanation for his behavior during the same line of questioning in his deposition.

While "[a]n employer's failure to follow its own policies may support an inference of pretext," id. at 639 (internal quotations and citation omitted), Cross has failed to demonstrate that Dahl's did not follow its own policies. Instead, Cross merely takes issue with the lack of

---

[7] Cross relies upon the following:

> Q. Now, did you tell Mr. Cross that you thought what he was doing was stealing?
> A. I don't know that I did that.
> Q. Now, I want to be clear as to what you thought here. Did you think that Mr. Cross was taking cans that had already been redeemed and running them back through the machine?
> A. No, not necessarily.
> Q. What do you mean 'not necessarily'?
> A. I didn't have any facts to prove that. I didn't accuse him of theft. I don't think I wrote him up for that reason.

Pearson Dep. 40:10-22, Pl.'s App. 10, ECF No. 25-4.

progressive disciplinary procedure utilized by Dahl's, which fails to demonstrate pretext. Cross was an at-will employee and his redemption of cans while on the job did constitute a violation of company policies. Cross' disdain for the lack of procedure is immaterial.

As alleged by Cross, Dahl's terminated him to save expense by replacing him with an employee compensated at a lower pay rate. Cross overlooks that "[e]mployment decisions motivated by characteristics other than age (such as salary and pension benefits), even when such characteristics correlate with age, do not constitute age discrimination." Hanebrink, 110 F.3d at 647; see also Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993) ("[A]n employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" (internal citation omitted)). Further, a maximum pay rate can be obtained by an employee in Cross' former position within 24-30 months, making age relatively inconsequential in the company's consideration of payroll expenses.

Most significantly, Cross has utterly failed to provide this Court any evidence that his termination was based on his age. Instead, the evidence demonstrates that Dahl's has employees within the same protected class as Cross. It is Cross' burden to "show that if it were not for his age, he would not have been terminated." Clark v. Matthews Int'l Corp., 639 F.3d 391, 398 (8th Cir. 2011) (internal quotation marks and citation omitted). Since Cross has not met this burden, Dahl's is entitled to summary judgment. See Rahlf, 642 F.3d at 638-40 (affirming the district court's grant of summary judgment when the employees failed to show that the employer's proffered reason for terminating them was pretextual).

**III. CONCLUSION**

For the foregoing reasons, Dahl's Motion for Summary Judgment, ECF No. 21, must be **granted** and the above-entitled action **dismissed**.

**IT IS SO ORDERED**.

Dated this 5th day of July, 2012.

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT